

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Criminal Case No. 07-cr-00085-WYD

UNITED STATES OF AMERICA,

      Plaintiff,

v.

1.  THOMAS W. QUINTIN,

      Defendant.

---

## PLEA AGREEMENT AND STATEMENT OF FACTS RELEVANT TO SENTENCING

---

The United States of America (the government), by and through Robert E. Mydans, Assistant United States Attorney for the District of Colorado, and the defendant, Thomas W. Quintin, personally and by counsel, Edward R. Harris, submit the following Plea Agreement and Statement of Facts Relevant to Sentencing pursuant to D.C.COLO.LCrR 11.1.

## I. PLEA AGREEMENT

The defendant agrees to plead guilty to a seven (7) Count Information, which was filed in open court on March 1, 2007, charging in Counts 1 and 2, violations of 42 U.S.C. § 407)(Misuse of a Social Security Number)[1], in Counts 3 and 4, violations of 18 U.S.C. § 287 (False Claims Against the United States)[2], in Counts 5 and 6, violations of 18 U.S.C.

---

[1] The elements of Title 42, U.S.C. § 408 are that: (1)

[2] The elements of Title 18, U.S.C. § 287 are that: (1) the defendant made and presented to the Department of the Treasury, Internal Revenue Service a false and fraudulent claim against the

§ 1343 (Wire Fraud)[3], 18 U.S.C. § 2 (Principals, Aiding and Abetting, and Causation), and in Count 7, a violation of 18 U.S.C. § 981 (forfeiture).   The parties agree and understand that the United States Sentencing Guidelines must be considered by the sentencing court, but that they are advisory and not mandatory in their application.

The United States takes the position that there is a loss for purposes of this plea agreement in the approximate amount of $280,704.00.  The United States also takes the position that there is restitution due and owing to the United States Department of the Treasury, Internal Revenue Service, in the approximate amount of $280,704.00. The defendant agrees that there is both a loss and restitution owing, but the defendant reserves the right to present evidence in support of a different loss and restitution amount.

The defendant has agreed to meet with government agents and prosecutors and be debriefed concerning his knowledge of the criminal activity described herein and the conduct of others involved.  He has further agreed to testify and provide other information as requested by the government.  In return for that cooperation, the government agrees to file a Motion for Substantial Assistance pursuant to Section 5K1.1 of the now advisory Sentencing Guidelines.  The government reserves the right to make the sole decision as to whether or not to file such a motion, as to the value of such cooperation, and the extent, if any, of departure requested.

---

United States, (2) the defendant knew that the claim was false and fraudulent; and (3) the claim was material.

[3] The elements of Title 18 U.S.C. § 1343 are that (1) the defendant knowingly devised or intended to devise a scheme to defraud, (2) the defendant acted with specific intent to defraud, (3) the defendant caused another person to use interstate or foreign wire communications facility for the purpose of carrying out the scheme, and (4) the scheme employed false or fraudulent pretenses, representations , or promises that were material.

The defendant further agrees not to contest the forfeiture of the property that he purchased, bought, and/or acquired with the proceeds of the criminal activity described herein or the proceeds itself which is more fully described in Count 7 of the Information.

## II. **STATUTORY PENALTIES**

The maximum statutory penalty for a violation of 42 U.S.C. § 408 (Counts 1 and 2) is:  not more than 5 years imprisonment; not more than $250,000.00  fine, or both; not more than 3 years supervised release; $ 100.00 Special Assessment fee per count of conviction; plus restitution if applicable.

The maximum statutory penalty for a violation of 18 U.S.C. § 287 (Counts 3 and 4) is:  not more than 5 years imprisonment; not more than $250,000.00  fine, or both; not more than 3 years supervised release; $ 100.00 Special Assessment fee per count of conviction; plus restitution if applicable.

The maximum statutory penalty for a violation of 18 U.S.C. § 1343 (Counts 5 and 6) is:  not more than 20 years imprisonment; not more than $250,000.00  fine, or both; not more than 5 years supervised release; $ 100.00 Special Assessment fee per count of conviction; plus restitution if applicable.

The conviction of any count described herein may cause the loss of civil rights, including but not limited to the rights to possess firearms, vote, hold elected office, and sit on a jury.  A violation of the conditions of probation or supervised release may result in a separate prison sentence.  If the defendant is not a citizen of the United States, this conviction may have adverse consequences related to his immigrant status in the United States.

## III. STIPULATION OF FACTUAL BASIS AND FACTS RELEVANT TO SENTENCING

The parties agree that there is no dispute as to the material elements which establish a factual basis of the offense of conviction.

Pertinent facts are set out below in order to provide a factual basis for the plea and to provide facts which the parties stipulate are relevant, pursuant to §1B1.3, for computing the appropriate advisory guideline range. To the extent the parties disagree about the facts relevant to sentencing, the statement of facts identifies which facts are known to be in dispute at the time of the plea. (§6B1.4(b)) The parties agree that disputed facts will be resolved by the Court at sentencing.

The statement of facts herein does not preclude either party from presenting and arguing, for sentencing purposes, additional facts or factors not included herein which are relevant to the guideline computation (§1B1.3) or to sentencing in general (§1B1.4). In "determining the factual basis for the sentence, the Court will consider the stipulation [of the parties], together with the results of the presentence investigation, and any other relevant information." (§6B1.4 Comm.)

The parties agree that the evidence would show that the date on which conduct relevant to the offense (§1B1.3) began is approximately November, 2006 . The parties agree that the government's evidence would be:

On 1/4/07, Trista G. Merz, Special Agent, IRS-CI, Denver Field Office, contacted Special Agent Joe Joyce, Social Security Administration, Office of Inspector General (SSA/OIG) and explained that THOMAS W. QUINTIN, dba "Quick and Easy Tax

-4-

Service" and "HRM Tax Service", 1800 S. Sheridan Boulevard, #102, #104, #202, and #303, Denver, Colorado, 80232, was involved in an on-going fraudulent tax filing scheme, and that such a scheme dated to the 2005 federal tax filing season.

The investigation revealed  that THOMAS W. QUINTIN has been preparing and filing fraudulent income tax returns containing Social Security Numbers (SSN's) of unknown origin.  Tracy Janssen works for an online tax software company located in the state of Iowa and as a result had knowledge of QUINTIN's income tax and preparation activities.  Janssen works for the online tax software company that QUINTIN has been using to prepare and file the fraudulent income taxes.  Each tax return contains an SSN.   Each return is transmitted electronically from Colorado to Tax Act using interstate wire facitities. The following is a summary from information provided to SA Merz by Janssen:

a. Tracy Janssen is the Filing Services Team Leader for an online tax software company called Tax Act. Offices for Tax Act are located in Iowa.  QUINTIN has been using Tax Act to prepare and file fraudulent income tax returns.  Tax Act is not for return preparers to use, but it is designed for individuals to prepare and file their own income tax returns.

b.  In November 2006, Janssen noticed credit cards in QUINTIN's name were being used to pay for multiple income tax return filings with Tax Act for 2005 income tax returns.  Janssen then ran a check on all the returns that used credit cards in the name of THOMAS QUINTIN.  She saw there were multiple returns being paid for using credit cards on QUINTIN's name.  From Janssen's experience working for the online tax software company, she thought this was

unusual. Janssen then noticed those returns that were being paid for using credit cards in QUINTIN's name were all coming from the same internet provider (IP) address. Jenssen then ran a search for all returns using that IP address. That search revealed over three hundred 2005 tax returns that were sent to Tax Act to be filed with the IRS from that same IP address.

c. Janssen then ran that same IP address for 2006 returns. She saw thousands of returns had already been partially prepared for the 2006 filing season. Jenssen also noticed multiple other similarities. When you use Tax Act to prepare your income tax returns, you create an account. Many of these accounts from the same IP address used a domain name that was unusual, "qneserv." Jenssen then looked up that domain name using the internet and saw that it was registered to Thomas QUINTIN and the registrant is Quick and Easy Tax Services at 1800 S. Sheridan Blvd. #104, Denver, Colorado 80232.

d. Jenssen then saw there were hundreds of 2006 returns being prepared daily from that same IP address daily. This was in November 2006, and thousands of tax returns had the accounts with returns that had names and addresses entered on them already.

e. Jenssen also saw that some of those 2006 returns were being paid for with credit cards in QUINTIN's name again.

f. Jennsen also noticed similarities in the 2005 returns that were filed  and 2006 returns that were started.  The returns all had one W2, low income, single wage earner, single filing status and all were getting refunds under $1,000..

-6-

g. Approximately three hundred 2005 returns were filed using the same IP address. Out of those three hundred returns approximately two hundred were accepted by the IRS and one hundred were rejected by the IRS for errors.

h. Jenssen noticed the 2005 returns from the same IP address had refunds that were all going to one of 7 bank accounts. All refunds are transmitted electronically from Tax Act outside the state of Colorado to bank accounts associated with the defendant, THOMAS W. QUNITIN, in the state of Colorado.

i. Jenssen identified a second IP address which it appeared QUINTIN had been using in 2005 with Tax Act. Jenssen searched this second IP address and found another one hundred returns that were filed and accepted by the IRS. These returns had the same characteristics as the other returns; some were paid for using credit cards in QUINTIN's name, all had one W2, low income, single wage earner, single filing status, and all received refunds under $1000.

On 1/5/07, SA Merz created an excel spreadsheet containing 214 names and associated Social Security Numbers (SSN). This information she obtained from Janssen. This excel spreadsheet was provided to SA Joyce of SSA/OIG. SA Joyce ran all the numbers through the SSA "numident" system, which notes, among other identifiers, SSN's and their authorized users. This system also includes the DOB, and where applicable, the date of death of these users. All 214 "numidents" were printed and reviewed. Approximately 90% of the names clearly show dates of death, with all dates of death being listed in the 1960's or early to mid 1970's. Of the remaining approximate 10%, a second SSA sub-database search reflected these individuals to all

be deceased, and in the similar time frame.  The SSA system did not initially incorporate all the dates of death in the "numidents" due to the age of the records.  The second search, however, revealed all 214 authorized users to be deceased.  The dates of death were shown to be in the 1960's and early to mid 1970's.  The SSN's and names in the spreadsheet matched the SSN's and authorized user names in the SSA database.

On 1/11/07, SA Joyce received a 2nd spreadsheet list of 129 SSN's and names from SA Merz.  This list was also provided to SA Merz by Janssen.  This reflected another internet provider (IP) address connected to tax filings for QUINTIN.  SA Joyce ran all these names and associated SSN's through the SSA "numident" database system. The results were similar to the prior run.  All names matched the SSN's, all were deceased, and dates of death were noted in the 1960s' or early to mid 1970's. The SSN's and names in the spreadsheet matched the SSN's and authorized user names in the SSA database.

On 1/12/07, records of the State of Colorado "Driver Record" information were reviewed and those records reflected that Thomas William QUINTIN resided at 5775 W. Dartmouth Ave., Apt 3-104, Denver, CO 80227.

On 1/16/07, SA Joyce conducted an SSA database review on Quintin's social security number and found that none of the social security numbers used on the tax returns were assigned to Thomas W. Quintin.

On 1/29/07, SA Joyce received a 3rd spreadsheet list in excess of 800 SSN's and names from SA Merz.  This list was also provided to SA Merz by Janssen. This list reflected QUINTIN's filings with the IRS for tax year 2006.  SA Joyce selected a sample

which was run through the SSA "numident" database system, as done with the other lists. The result was similar in that the SSN's and names in the spreadsheet matched the SSN's and authorized user names in the SSA database. The dates of death were primarily in the 1960's and 1970's, though some were identified as dying in the 1950's,1980's, 1990's, and 2000's. The vast majority of these filings have not, and would not, result in tax refunds since internal IRS controls have been enacted. A small minority of 2006 refunds may have already been paid to QUINTIN based upon his fraudulent tax filings.

The Colorado Secretary of State website reflects QUINTIN to be the registered agent for two businesses. One is called HRM Tax Services LLC formed on February 27, 2006, with a mailing address of 1800 S. Sheridan Blvd. #104. The Registered Agent is listed as Thomas QUINTIN at 5775 W. Dartmouth Ave. #3-104, Denver, CO 80227, which is QUINTIN's previous residence. There are also articles of incorporation filed for HRM. The articles list the principle office for HRM at 1800 S. Sheridan Blvd. #104, Denver, Co 80232. The articles also list the name of the individual forming the limited liability company as Thomas QUINTIN at 1800 S. Sheridan Blvd. #104, Denver, Co 80232. The other business is Quick and Easy Tax Service, with the registrant listed as QUINTIN at an address is 5775 W Dartmouth Ave. #3-104. The formation date for "Quick and Easy Tax Service" is January 1, 2006.

On or about 1/30/07, investigation revealed that the internet provider for two of the IP addresses used for the preparing and filing of 2006 tax returns by QUINTIN is being serviced by Eschelon Telecom, Inc. According to the website "whois.com", one (1) of the IP addresses is registered to "Quick and Easy Tax Service" at 1800 S.

Sheridan Blvd. Suite #303, Denver, CO 80232. The other is registered to "HRM Tax LLC" at 1800 S. Sheridan Blvd., Suite 104, Denver, CO 80232. The registered date for both is December 12, 2006.

On or about 1/30/07, investigation revealed that the 2005 and 2006 electronically filed income tax returns contain bank information and routing and account numbers for the direct deposit of the refunds. In 2005 there were approximately 7 different accounts used for the three hundred plus returns that were filed. In 2006 there has been an additional 9 bank accounts used. A total of 8 banks and 16 accounts were used for the 2005 and 2006 tax return filings. SA Merz spoke to four of the banks where accounts are located. On December 7, 2006, she spoke with employees of Bank of the West and US Bank, both located near QUINTIN's residence. Employees at both banks identified QUINTIN from his DMV photo and verified he had an account there. One bank employee from US Bank stated she did not feel comfortable with some of QUINTIN's banking requests and thought they were "questionable". Another bank employee from Bank of the West stated QUINTIN told her he prepares income tax returns and comes in about every ot day during tax season. On January 17, 2007, SA Merz spoke to a bank officer at First Bank of Lakewood. That bank employee confirmed the account number belongs to a Thomas QUINTIN on Dartmouth Ave and it is an open account. On that same day SA Merz spoke to a branch manager for Key Bank. The branch manager confirmed the account numbers belonged to HRM Tax Services and Quick and Easy Tax Services, and are open accounts.

Investigation revealed QUINTIN received approximately $220,000 in false refunds in 2006 for the 2005 tax returns he prepared and filed as outlined above.

Specifically as to Counts 1 through 6 of the information, the defendant Thomas W. Quintin, either filed or caused to be filed, the tax returns as outlined, knowing that the individual named on the tax return was deceased, that the social security number used was assigned to that deceased individual, that no legitimate income had been earned by that individual in the tax year indicated, that a claim was being made against the United States for a tax refund when none was due and owing, and that the return was electronically filed using interstate communication facilities between the state of Colorado and the state of Iowa where Tax Act conducts business.

## IV. SENTENCING COMPUTATION

The parties understand that the sentencing guidelines are advisory only and are but one factor the Court will consider in sentencing. The Court must also look at the factors outlined in Title 18, U.S.C. Section 3553.

Any estimation by the parties regarding the estimated appropriate guideline range does not preclude either party from asking the Court to depart from the otherwise appropriate guideline range at sentencing, if that party believes that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the sentencing guidelines. (§5K2.0)]

The parties understand that the Court may impose any sentence, up to the statutory maximum, regardless of any guideline range computed, and that the Court is not bound by any position of the parties. (§6B1.4(d)) The Court is free, pursuant to §§6A1.3 and 6B1.4, to reach its own findings of facts and sentencing factors

-11-

considering the parties' stipulations, the presentence investigation, and any other relevant information. (§6B1.4 Comm.; §1B1.4)

To the extent the parties disagree about the sentencing factors, the computations below identify the factors which are in dispute. (§6B1.4(b))

A.      The base guideline is § 2B1.1, with a base offense level of 7, pursuant to 2B1.1(a)(1).  Pursuant to 2B1.1(b)(1)(G), add 12 levels for a loss in excess of $200,00.00 and less than $400,000.00.

B.      No specific offense characteristics apply.

C.      The government submits that pursuant to 3B1.1(b), three levels are added because the criminal activity was otherwise extensive.  The defendant reserves the right to contest this adjustment prior to sentencing.  Pursuant to 3D1.2, the offenses involve substantially the same harm and are grouped together in a single group.

D.      The adjusted offense level would therefore be either 22 or 19, depending upon whether or not the 3B1.1(b) adjustment is applied..

E.      The defendant should receive a three level downward adjustment for acceptance of responsibility.  The resulting offense level would therefore be either 19 or 16.

F.      The parties understand that the defendant's criminal history computation is tentative.  The criminal history category is determined by the Court.   Based on available information, if no other information were discovered, the defendant's criminal history category would be IV.  That is based upon four (4) criminal history points for prior convictions, two (2) criminal history points pursuant to 4A1.1(d) because the defendant committed the instant offense while on supervised release, and one (1)

-12-

criminal history point pursuant to 4A1.1(e) because the defendant committed the instant offense less than two years after release from imprisonment on a previously imposed sentence. Therefore, the defendant has 7 criminal history points and is in criminal history category IV.

      G.      Assuming the tentative criminal history facts of (F) above, the career offender/criminal livelihood/armed career criminal adjustments would not apply.

      H.      The guideline range resulting from the estimated offense level(s) of (E) above, and the (tentative) criminal history category of (F) above, is either 46-57 or 33-41months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the estimated offense level(s) of (E) above could conceivably result in a range from 30 months (bottom of Category I), to 78 months (top of Category VI). The sentence would be limited, in any case, by the statutory maximum.

      I.      Pursuant to guideline §5E1.2, assuming the estimated offense level of (E) above, the fine range for this offense would be either $5,000 to $50,000 or $6,000 to $60,000, plus applicable interest and penalties. However, the statutory fine could be as high as $250,000.00.

      J.      Pursuant to guideline §5D1.2, if the Court imposes the term of supervised release, that term shall be not more than 5 years.

## V. <u>WHY THE PROPOSED PLEA DISPOSITION IS APPROPRIATE</u>

This document states the parties' entire agreement. There are no other

-13-

promises, agreements (or "side agreements"), terms, conditions, understandings or assurances, express or implied. In entering this agreement, neither the government nor the defendant have relied, or are relying, on any terms, promises, conditions or assurances not expressly stated in this agreement.

Date: 04/27/07

THOMAS W. QUINTIN
Defendant

Date: 4/27/07

EDWARD R. HARRIS
Attorney for Defendant

Date: 4/27/2007

ROBERT E. MYDANS
Assistant U.S. Attorney

-14-